THE COURT.
 

 Action upon an insurance policy insuring against loss resulting from accidental bodily injury and sickness, wherein plaintiff recovered judgment, from which defendant appeals.
 

 The policy sued upon became effective September 19, 1952, and insures plaintiff and his wife “against loss resulting from ... sickness which is contracted while this Policy is in force but after this Policy has been maintained in force for not less than (30) days.” It further provides that “If such injury or sickness shall require treatment... by a legally qualified physician or surgeon, the Company will pay to the Insured” the expense incurred for hospital and medical charges, and fees of physician and surgeon in the treatment of such injury or sickness within the limits therein specified.
 

 The loss here sought to be recovered is the expense incurred in the medical and surgical treatment of plaintiff’s wife, and the sole question presented, is whether such treatment was for sickness which was contracted after 30 days from the effective date of the policy.
 

 The evidence is to the effect that Mrs. Skroopka, who at the time of trial was 47 years of age, had suffered from pain in her breasts before menstrual periods since she was 20 years of age, since which time she was also aware of the fact that she had nodules or lumps in her breasts, which just before the menstrual period would swell and become painful. In November, 1951, she underwent a hysterectomy, following which she experienced little, if any, pain in her breasts, but at times felt some tenderness during the period of the normal menstrual
 
 *Supp. 912
 
 cycle. From time to time she consulted physicians, in the course of which her breasts were examined, but at no time was it suggested or was she advised that any medical care or treatment was required for her breasts. In May, 1952, she consulted Dr. Sperling, a surgeon. In the course of his examination Dr. Sperling examined her breasts and recorded that they “seem cystic and have palpable marble-like masses which are very firm in both outer quadrants. ’ ’ The doctor noted that at that time it was his impression that this was “probably Sehimmelbusch’s disease, which means chronic cystic mastitis. ’ ’ The doctor further stated that he did not then feel that this condition required any medical care, treatment or surgery. The doctor further stated that the condition of the breasts was not uncommon—“many women have that.”
 

 Mrs. Skroopka again visited Dr. Sperling on September 2, 1952, who made an examination of her breasts which involved ‘ ‘multiple cystic areas with two rather firm areas in the outer upper quadrant of the right breast and a similar area in the left.” He then noted on his records, “to watch these areas very carefully for question of excision,” although he did not mention this to the patient. The doctor stated that he was concerned about the condition of the breasts because a week earlier he had operated upon Mrs. Skroopka’s sister for cancer of the breast and of the incidence of cancer in members of the same family. He did not, however, recommend any medical or surgical treatment of the breasts at that time. Dr. Sperling again examined Mrs. Skroopka on November 10, 1952, when he noted that the examination was the same as before, cystic areas of both breasts with some tenderness in the right and some increase in size, no real alarm, and no treatment recommended.
 

 Dr. Sperling next examined Mrs. Skroopka on December 26, 1952, and then determined, “because of difficulty in detecting an early lesion here in the outer upper quadrant of both breasts” and the family history, “to excise the upper outer quadrant of both breasts to be sure about it.” Accordingly, some two weeks later, Mrs. Skroopka was hospitalized and the upper outer quadrants of the breasts were excised and subjected to a pathological examination which revealed that there was no malignancy, and the breasts were repaired and sewed
 
 up;
 
 the ultimate diagnosis being adenosis fibrosis.
 

 The defendant contends that the condition for which Mrs. Skroopka was operated upon, and for the expenses incident to which plaintiff was awarded judgment, preexisted the effective date of the policy, and hence is not insured against thereby.
 
 *Supp. 913
 
 Plaintiff, on the contrary, argues that the surgery was not for the purpose of removing the lumps or nodules, but for the purpose of ascertaining whether or not cancer was present. As he construes the question presented, it is this: “if a qualified surgeon recommends surgery for a condition or illness which he in good faith believes to exist, does the fact that such ailment is ruled out by surgery bar an insured from recovering under a policy of insurance such as the one now before the court?” Plaintiff further states, “A more serious question may have been presented if the surgery had resulted in a finding that cancer did exist but the fact remains that no cancerous condition was present. ’ ’
 

 The question as presented by plaintiff and the statement last quoted, however, make plain the weakness of his position. If the “sickness” was not that manifested by the presence of the nodules or lumps in the breasts (ultimately ascertained to be adenosis fibrosis)—which motivated the doctor to resort to surgery—what was it ? If the surgery had disclosed that the patient was suffering from cancer and that this condition existed prior to the expiration of 30 days after the effective date of the policy, there could be but little question that plaintiff would not be entitled to recover. It seems unescapable, therefore, that the “sickness”-—if such it may be called—which occasioned the hospitalization and surgery— was a condition of the breasts (adenosis fibrosis) that existed prior to the effective date of the policy without regard to whether or not surgery ultimately disclosed a benign or malignant condition.
 

 Nor is it an answer to say, as does plaintiff, that the condition of Mrs. Skroopka prior to the issuance of the policy does not constitute “sickness,” for if this be true, the same condition prevailed immediately preceding the surgery. The fact that Dr. Sperling was not prepared to advise surgery following his examinations in May and September preceding the issuance of the policy, in nowise alters the situation. This was a matter of judgment upon his part, but the same condition, although perhaps aggravated by reason of an increase in the size of the mass between September and December, was what prompted him to resort to surgery for the purpose of determining, as he says, whether cancer was present.
 

 Plaintiff quotes the following from
 
 Fohl
 
 v.
 
 Metropolitan Life Ins. Co.
 
 (1942), 54 Cal.App.2d 368, 378-379 [129 P.2d 24]:
 

 “As was said in
 
 Reiser
 
 v.
 
 Metropolitan Life Ins. Co.,
 
 262 App.Div. 171 [28 N.Y.S.2d 283], ‘A disease does not occur or
 
 *Supp. 914
 
 originate within the meaning of the policy until it becomes a disease in the general acceptation of that term.’ In other words, the beginning of the insured’s disability dates from the time when the disabling disease first manifested itself or became acute, and not from the time when the medical cause of the disease may have originated or begun. ’ ’
 

 The language quoted is not apposite, for the situation here is not that presented where a disease, though attributable to a preexisting condition, does not manifest itself until after the effective date of the policy. Thus in the case cited, the disability for which recovery was permitted was insanity which occurred during the time the policy was in force, and it was held immaterial that the pathological cause of the insured’s brain lesion or insanity may have been syphilis from which he suffered prior to the issuance of the policy. Unlike the cited ease, here the “sickness” which occasioned the surgery was, as noted, the presence of the nodules in the breasts (adenosis fibrosis)—a condition existing prior to the effective date of the policy.
 

 While it is undoubtedly the rule that “insurance policies are to be construed liberally in favor of the assured”
 
 (Brubaker
 
 v.
 
 Beneficial etc. Life Ins. Co.
 
 (1955), 130 Cal. App.2d 340, 347 [278 P.2d 966]), this rule applies only to resolve an uncertainty or ambiguity in favor of the insured; it may not be invoked to change the nature of the contract or to nullify an express and unequivocal agreement.
 
 (Brickell
 
 v.
 
 Atlas Assur. Co., Ltd.
 
 (1909), 10 Cal.App. 17, 28 [101 P. 16].) Where, as here, the terms of the policy are plain and explicit, and the meaning clear, courts indulge in no forced construction in order to cast a liability upon the insurer which it has not assumed.
 
 (First Nat. Bank
 
 v.
 
 Maryland Cas. Co.
 
 (1912), 162 Cal. 61, 69-70 [121 P. 321, Ann. Cas. 1913C 1170].) To paraphrase the language of the case last cited, the policy here was not a general policy to pay the cost of surgical operations or medical treatment, but only for such expenditures when incurred as a result of injury or “sickness which is contracted while this policy is in force but after this Policy has been maintained in force for not less than thirty (30) days.”
 

 The judgment is reversed.