The MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Appellant,

v.

Fred G. BOHANNON, Appellee.

No. 18030.

Court of Civil Appeals of Texas, Dallas.

Dec. 7, 1972.

Larry M. Lesh, Locke, Purnell, Boren, Laney & Neely, Dallas, for appellant.

Charles L. Hirsch, Hirsch, Reese & Anthony, Garland, for appellee.

BATEMAN, Justice.

The appellant insurance company appeals from a summary judgment awarding to the appellee Bohannon benefits of a group hospitalization policy issued by appellant to Bohannon's employer covering its employees and their dependents. The benefits awarded cover the expenses incurred by Bohannon in connection with surgery performed on his seven year old son Michael in March, 1971.

By its first point of error appellant says the summary judgment should be reversed because the sickness or disease for which the expenses were incurred was one which required medical care or treatment during three months immediately preceding the effective date of the policy, and the expenses were therefore excluded from coverage of the policy by its terms.

The policy, which became effective August 15, 1970, provided major medical expense benefits to an insured who incurs "eligible medical expenses," subject to the exclusions and limitations contained in the policy. The section entitled "Exclusions and Limitations" provided in part that charges incurred "in connection with" a certain number of situations shall not be "eligible medical expenses." Among these situations thus excluded were:

"(7) A sickness, disease or bodily injury which required medical care or treatment during the 3 months immediately preceding the effective date of the individual's insurance. This exclusion shall not apply to charges incurred in connection with such sickness, disease or bodily injury after * * * a 3 month period ending while the individual is insured under this Major Medical Expense Benefit Provision and during which he incurred no medical care or treatment expenses in connection with the sickness, disease or bodily injury; * * *."

Michael was born in March, 1963 and in the first month of his life underwent three surgical procedures for intestinal disorders. From appellee's summary judgment evidence it appears that beginning approximately four years prior to March, 1971 Michael was discovered to be anemic and as treatment therefor was given hypodermic injections of iron, or "iron shots," at least once each month. As these injections were not producing the desired results, Michael was referred to Dr. Dick G. Ellis of Fort Worth, Texas, who on March 1, 1971 made a preliminary diagnosis that the underlying cause of Michael's condition was a "blind loop syndrome," described by the doctor as "where a piece of the intestine has been left out of continuity with the intestinal tract." Dr. Ellis testified by deposition that this "blind loop syndrome" always results from surgical procedure, and is sometimes called atresia, or absence of a part of the intestine, where one piece of the intestine is so small that it is impossible to sew it back together, "so the only way around it was to sort of sew it up in a side to side fashion, and in the process of doing this you leave blind ends of the intestine when it is sewn together."

Dr. Ellis expressed the opinion that the blind loop syndrome resulted from the surgery which Michael underwent in 1963. With respect to the relationship between the blind loop syndrome and a condition requiring the iron shots which Michael had been receiving for three years prior to the effective date of the policy in question, Dr. Ellis testified that he thought the blind

loop syndrome was what Michael's problem was, for which he was receiving the iron shots, and that his anemia was part of the blind loop syndrome and was one of the things "that these people have," and that the anemia is a result of the blind loop syndrome, and that the blind loop syndrome was "more or less" the cause of the anemia.

Dr. Ellis confirmed his preliminary diagnosis by operating on Michael on March 23, 1971, when he discovered the blind loop syndrome. Appellee sued to recover the expenses incurred in connection with this surgery.

It appears without dispute from appellee's own summary judgment evidence that during the three months prior to the effective date of the policy Michael was anemic and was receiving injections of iron at least monthly as treatment for such anemia, and that the anemia was caused by the blind loop syndrome. Therefore, it must be recognized that the charges for which recovery is sought were incurred in connection with a sickness or disease requiring medical care or treatment during the period of three months immediately preceding the effective date of the policy.

■ To hold otherwise would be to modify or remake the contract between the parties, which of course we have no authority to do. British America Assurance Co. v. Miller, 91 Tex. 414, 44 S.W. 60, 62 (1898); Royal Indemnity Co. v. Marshall, 388 S.W.2d 176 (Tex.Sup.1965); Abel v. Occidental Life Insurance Co., 410 S.W.2d 451 (Tex.Civ.App., Fort Worth 1966, writ ref'd n. r. e.).

Dr. Ellis in his deposition testified that he did not consider that iron shots were medical care or treatment of a blind loop syndrome, and that the giving of iron shots does not do anything to cure a blind loop syndrome, which can only be cured by surgery; and that, since no one knew prior to the surgery that Michael had the blind loop syndrome, no one was treating him for the blind loop syndrome.

Appellee argues from this testimony that no such medical treatment was required during the period May 15, 1970 to August 15, 1970, the effective date of the policy, nor at any time thereafter until Dr. Ellis' examination and diagnosis on March 1, 1971; thus making the exclusion inapplicable under the second sentence of the above quoted excerpt from the policy; and that it cannot be said that Michael was receiving treatment for a sickness which was unknown to doctor and patient alike.

■ Even though the cause of the anemia was not known, the fact remains that Michael suffered from it and received medical treatment for it every month for several years preceding the issuance of the policy. Even if it be conceded that the anemia was only a symptom and not the disease or sickness itself and that whoever prescribed the iron shots did so thinking the anemia was due to deficient diet, nevertheless it still appears from appellee's own summary judgment evidence that the underlying cause of the lad's problem was the blind loop syndrome which, until it was corrected by surgery, manifested itself as a disease requiring medical treatment at least monthly for much longer than the three month period immediately preceding the effective date of the insurance, and thereafter until March 1, 1971, and that there was therefore no three month period ending while the insurance was effective and during which no medical treatment was incurred in connection with the sickness or disease in question.

Therefore, it is our holding that appellee has not carried his burden of showing the absence of material fact issues and that he is entitled to judgment as a matter of law. The first point of error is sustained.

The summary judgment is reversed and the cause remanded for trial.