MUTUAL HOSPITAL INSURANCE, INC. *v.* MORRIS L. KLAPPER AND MARIETTA KLAPPER.

[No. 674S125. Filed June 25, 1974.]

*Robert A. Claycombe, Kothe, Shotwell, Claycombe, Hendrickson & Kortepeter,* of Indianapolis, for appellant.

*Morris L. Klapper,* of Indianapolis, for appellees.

## ON PETITION TO TRANSFER

ARTERBURN, C.J.—This case comes to us on a Petition to Transfer from the Court of Appeals. It is an action brought by the Appellees, Klappers, on a Blue Cross insurance policy for nonpayment of hospital and medical benefits as a result of treatment given their four (4) year old daughter for "bilateral optic atrophy." The Blue Cross policy was first issued on December 15, 1969. The condition of the child was first diagnosed on January 13, 1970, and she was in the hospital for treatment from January 21, 1970 to February 11, 1970. The policy contained the following "pre-existing conditions" clause:

"ARTICLE XII—BLUE CROSS BENEFITS

\* \* \*

E. Pre-Existing Conditions.

*For any illness,* injury *or condition which existed* prior to the effective date of the membership of the patient, Blue Cross will pay for hospital service only after a lapse of two hundred and seventy (270) consecutive days from the effective date of such membership." (emphasis supplied)

The trial court entered summary judgment for the Plaintiffs upon the joint motion of the parties therefor, supported by affidavits which revealed that there was no knowledge of the condition of the child prior to a routine diagnosis for eye examination made by a physician on January 13, 1970. The affidavits further show that the doctor making the diagnosis stated that in his opinion this condition existed prior to December 15, 1969, the date of the policy. The Court of Appeals reversed the trial court [*Mutual Hospital* v. *Klapper* (1972), 153 Ind. App. 555, 288 N.E.2d 279] and in effect held an illness or sickness occurs when it first manifests itself or is capable

of being diagnosed by a physician. The appellees (Plaintiffs below) contend that the interpretation of the clause in question should be that an illness, injury or condition "exists" no earlier than when the insured knew, or ought to have known, from manifest symptoms that he was ill or sick. We, therefore, have the question arise as to the proper interpretation of such exclusionary clauses. Is a person ill or sick when a medical expert or physician can first determine the condition through various tests, such as, X-ray, blood, etc., or should it be said that an insured is not ill or sick until because of symptoms he becomes aware, or ought to have become aware, of his illness? Is a person really "ill" or "sick" in the normal use of the words if he is not subject to manifest symptoms? Our courts have long recognized that when ambiguity arises, an insurance policy, like other kinds of written contracts, should be construed against the party who wrote the contract. *Freeman* v. *Commonwealth* (1972), 259 Ind. 237, 286 N.E.2d 396; *State Security Life Insurance Co.* v. *Kintner* (1962), 243 Ind. 331, 185 N.E.2d 527; *Masonic Acc. Ins. Co.* v. *Jackson* (1929), 200 Ind. 472, 164 N.E. 628. Furthermore, as I have said before, very few people read insurance policies. They are written in a language few people, aside from lawyers, understand. Indeed, even though courts presume that everyone reads his own insurance policy, common sense informs us that even the judges who make that statement do not always read their own insurance policies. *State Security Life Insurance Co. supra*, 243 Ind. at 339-40, 185 N.E.2d at 531 (concurring opinion). It is time the legislature order the writing of insurance policies in plain understandable language.

The parties to this contract were not equal in bargaining power. When, in such a situation, the stronger party seeks to enforce a contract we have said that:

"the party seeking to enforce such a contract has the burden of showing that the provisions were explained to the other party and *came to his knowledge* and there was in fact *a real and voluntary meeting of the minds and not merely*

*an objective meeting."* (emphasis in original) *Weaver* v. *American Oil Company* (1971), 257 Ind. 458, 464, 276 N.E.2d 144, 148.

The interpretation in favor of the insured, where two reasonable interpretations may be made, results also from the fact that an insurance policy contract is prepared, printed and delivered in a fixed ("adhesive") form to the other party. There is, in fact, no real bargaining as to the wording, as is the situation in ordinary contracts negotiated by contracting parties. As stated before, most of these "adhesion" contracts, prepared and printed by the stronger party, are never read by the party receiving them, unless some specific provision is called to his attention.

The contract as presented and delivered to the Appellees in this case does not say that the time-limitation applies to a *latent* illness such as any medical expert or physician could have discovered as "pre-existing condition." It could have so stated in plain language. We are asked to give that meaning and insert those words in the policy. A layman could reasonably think that the clause applied only to a condition of which he was aware or from which he was suffering prior to the effective date of the policy, and thus that the purpose of the clause was to protect the insurance company from that kind of fraud. A reasonable interpretation of the words in question is that a person is not ill or does not suffer injury until he is aware of it; that is, until he has manifest symptoms which cause him, or should cause him, to realize that he is sick or ill.

The Court of Appeals opinion, however, says that the policy will not cover the Appellees even though they and their young daughter were not aware, and could not have been expected to have been aware, that she had "bilateral optic atrophy" until the parents took her to a doctor for a routine eye examination, and he discovered the latent condition.

The trial court, in making a reasonable interpretation, held that *when* the parents discovered the sickness or illness, or

ought to reasonably have discovered the same, was the controlling fact. The trial court's reasoning is consistent with the medical fact that there are many hidden origins of sickness or illness and the symptoms do not become manifest for many years. These latent conditions, such as tuberculosis, cancer, or hardening of the arteries, are conditions, the origins of which the average individual is not prepared to diagnose. It is said that everyone is dying in some degree every day he lives from the day of his birth. One is really not sick or ill in common parlance until these symptoms become manifest and one is aware of the condition. It appears quite unfair to hold that when one takes out an insurance policy when one is unaware of any symptoms and has no symptoms manifest to the average person and later when one becomes ill, for the insurance company to refuse to pay because the company can get a medical expert or physician to testify that the insured has had a condition for many years prior to the effective date of the policy, which results in his present sickness or disability, and therefore, under the terms of the policy, the insured is not covered. After a death, an autopsy in most cases would be called for and would reveal conditions which no one was aware of and would not even have been revealed by physical check-ups during life. The purpose of the clause in question is to prevent fraud on the insurance company by concealment. The proposed interpretation puts the insured, however, at the mercy of the insurance company. On the other hand, medical testimony is always available to the insurance company to show that the insured "ought to have known" he was sick or ill at the time the insurance was contracted, and most policies contain a waiver of the privilege between the patient and his physician. Provisions in insurance policies similar to the one in this case with reference to non-insurability because of pre-existing illness, injury or condition must be one which the insured knew or reasonably should have known as a result of the presence of active or manifest symptoms evident to the insured and not latent conditions

solely capable of being discovered by a scientist or physician by means of modern technology available to such an expert.

The Court in this case is evenly divided on this Petition to Transfer. Givan and Prentice, JJ. voted to deny transfer; Arterburn, C.J. and Hunter, J., who concurs in this opinion, voted to grant transfer; DeBruler, J., did not participate. Therefore, pursuant to Rule AP. 11(B)(5), the Supreme Court being evenly divided, the Petition to Transfer is denied.

Hunter, J., concurs; Given and Prentice, JJ., vote to deny with opinion by Givan, J., in which Prentice, J., concurs; DeBruler, J., not participating.

GIVAN, J.—The appellees brought an action against the appellant for non-payment of hospital and medical benefits as a result of treatment to their four-year old daughter. The trial court's decision in their favor was appealed to the Court of Appeals. The Court in a decision written by J. Buchanan and reported in 288 N.E.2d 279 reversed the trial court and remanded the case for the determination as to whether a material issue of facts exists as to whether the child's eye condition was capable of being diagnosed by a physician prior to the effective date of the policy.

After an examination of J. Buchanan's opinion, we are of the opinion that he has correctly stated the law applicable in this case.

The writer of this opinion and J. Prentice vote to deny transfer in this case. C.J. Arterburn and J. Hunter vote to grant transfer. J. DeBruler is not participating in the opinion.

Therefore, under the rules of this Court, the petition to transfer is denied.

Prentice, J., concurs.

NOTE.—Reported at 312 N.E.2d 482.