**Heulitt E. SVENDDAL, Appellant,**

v.

**NEW ENGLAND LIFE INSURANCE COMPANY, Respondent.**

No. CX–86–18.

Court of Appeals of Minnesota.

June 17, 1986.

Review Denied Aug. 13, 1986.

---

Mark D. Luther, St. Louis Park, for appellant.

Gary A. Heck, Faegre & Benson, Minneapolis, for respondent.

Heard, considered and decided by LANSING, P.J., and FOLEY and WOZNIAK, JJ.

## OPINION

LANSING, Judge.

Appellant Heulitt Svenddal sought coverage under his New England Life Insurance employee group insurance policy. He had incurred medical expenses in connection with a condition that was ultimately diagnosed as throat cancer. Both parties moved for summary judgment. The trial court granted New England's motion and denied Svenddal's. Svenddal appeals from the judgment. We affirm.

## FACTS

New England Life Insurance Co. issued a group insurance policy to Edina Country Club on May 1, 1978. Under the plan, employees became eligible for coverage on the first day of the month following completion of three months of continuous active service. Heulitt Svenddal began working at the country club as a short-order cook on August 26, 1981.

On November 18, 1981, Svenddal went to Dr. Dennis Hines, his family doctor, because Svenddal was experiencing episodes of severe choking and throat discomfort. For the previous eight months he had also suffered from hoarseness. Dr. Hines' notes state that "whether [the hoarseness] represents a laryngeal tumor still needs to be considered." Dr. Hines referred Svenddal to a specialist, Dr. Melvin Sigel. On November 24, 1981, Dr. Sigel examined Svenddal; he found a growth in Svenddal's throat and tentatively diagnosed it as a cancerous tumor. To determine the diagnosis with certainty, Dr. Sigel scheduled a biopsy. The surgery was performed December 1, 1981. The biopsy results confirmed Dr. Sigel's initial diagnosis of cancer of the larynx. Svenddal returned to work the next day. Upon Dr. Sigel's recommendation, Svenddal underwent surgery for removal of his larynx on December 10, 1981. After the laryngectomy, Svenddal did not return to work at the country club.

New England Life refused to pay for any of Svenddal's medical expenses. Svenddal brought suit, claiming $7,106 in expenses incurred from December 1, 1981, through February 17, 1982. New England Life alleged in its answer that Svenddal's claim is

barred by the "pre-existing condition" limitation of the policy.[1]

Both parties brought motions for summary judgment. The trial court granted New England's motion and denied Svenddal's. The parties do not dispute the facts.

## ISSUES

1. Were Svenddal's medical expenses excluded by the pre-existing condition limitation in the policy?

2. Was Svenddal covered by the policy on December 1, 1981?

## ANALYSIS

New England Life argues that the pre-existing condition limitation in the policy excluded all of Svenddal's claimed expenses. That provision states that an insured cannot recover benefits for a sickness which commences prior to the date of coverage and on account of which medical expenses were incurred within the three months preceding the coverage date.

▪ Minnesota cases interpreting similar provisions have held that an illness commences when it "manifests itself so as to interfere with bodily functions." *Kellerman v. City of St. Paul*, 211 Minn. 351, 354, 1 N.W.2d 378, 380 (1941) (citing *Cohen v. North American Life & Casualty Co.*, 150 Minn. 507, 185 N.W. 939 (1921)). Whether a disease is discoverable prior to the date of coverage may be considered in determining when the sickness commenced for purposes of an insurance policy. *See Smith v. Benefit Association of Railway Employees*, 187 Minn. 202, 207, 244 N.W. 817, 819 (1932).

New England Life contends that Svenddal's sickness manifested itself before the date of coverage. While the parties dispute the date coverage started, for the purpose of this issue, New England Life accepts December 1, the date urged by Svenddal, as the coverage date. It argues that the cancer's manifestations included hoarseness, shortness of breath, difficulty in breathing, and severe choking. Svenddal argues that the disease did not manifest itself until it was diagnosed with certainty, after December 1.

The disease, however, had been tentatively diagnosed by Dr. Sigel before December 1; Dr. Sigel stated, by deposition, that as of November 24, throat cancer was his working diagnosis. He stated that there is no way to know when the cancer first became active, but that the progressive hoarseness was a probable symptom of the disease.

▪ Although it was not certain before the biopsy results that Svenddal had cancer, it was clearly evident that he suffered from symptoms of cancer. Neither the insurance policy nor the law requires that a firm medical diagnosis be made in order to find that a sickness has commenced, or manifested itself; Svenddal was obviously suffering from some sickness before December 1 and therefore was excluded from coverage under the pre-existing sickness exception to the policy.

Svenddal argues, in the alternative, that the pre-existing condition limitation does not apply to him because he suffered from a disease, not a sickness. He argues that a sickness is a condition which interferes with one's usual activities, while a disease may not. *See* 10A *Couch on Insurance 2d*, § 41A:7 (Rev. ed. 1982). Several coverage clauses in the policy speak of "disease" or "illness." The policy does not define these terms. Read as a whole, we do not find an ambiguity in their use; it is apparent that they were used interchangeably. Furthermore, the terms are technically synonymous. *Id.* Whether or not Svenddal was disabled by his condition, he was "sick" within the meaning of the pre-existing condition limitation clause of the policy.

---

1. Paragraph 10 of the "Risks Not Assumed" section of the policy provides that no medical benefits shall be paid with respect to

a sickness which shall have commenced prior to the date the employee * * * becomes insured or covered hereunder and on account of which medical expenses have been incurred or treatment received within the three consecutive months immediately preceding such date * * *.

New England Life raises the further issue that the expenses incurred for the December 1 biopsy were excluded because Svenddahl was not actively at work until December 2. The policy provides that if the employee is not actively at work on the day that coverage would begin, coverage would begin on the date the employee returns to active work. The trial court concluded that this issue was immaterial because the exclusion provision was applicable on November 24, 1981. We agree.

## DECISION

The trial court did not err in entering summary judgment in New England's favor.

Affirmed.