Stewart P. Hoover, Bryan D. Bolton, Shapiro and Olander, Baltimore, MD, for defendant.

**Alan L. HARDESTER, Jr. and Barbara Hardester,**

v.

**LINCOLN NATIONAL LIFE INSURANCE COMPANY and Employers Health Insurance Company.**

Civ. No. JFM-93-1685.

United States District Court, D. Maryland.

Jan. 7, 1994.

### MEMORANDUM

MOTZ, District Judge.

This case arises out of the denial of Barbara Hardester's (hereinafter plaintiff) health insurance claim for coverage of medical expenses following the diagnosis and treatment of her breast cancer. Plaintiff's insurers, Lincoln National Life Insurance Company and its subsidiary Employers Health Insurance Company (hereinafter defendants), refused to pay plaintiff's claim, asserting that the breast cancer was a pre-existing condition and was thus excluded from coverage under plaintiff's policy.

## I.

Plaintiff procured her health insurance from defendants as an eligible family member under a group policy provided by her husband's employer. The effective date of plaintiff's coverage was 12:01 a.m. on May 1, 1992.

In 1981, plaintiff was first diagnosed with fibrocystic breast disease. Fibrocystic breast disease (also known as fibrocystic changes) is a common condition in women in their thirties and forties. It manifests itself by the appearance of benign cysts, masses, and formations of fibrous tissue in the breasts. Despite its characterization as a "disease," the condition is not one which in and of itself causes any deterioration in health. Fibrocystic breast disease does not develop into cancer.

On April 6, 1992, approximately a month before her health insurance coverage commenced, plaintiff had a routine gynecological examination. Her gynecologist, Dr. Barbara Phillips–Seitz, noted the presence of fibrocystic changes in both her breasts and an "elongated ropey mass" in her left breast. Dr. Phillips–Seitz diagnosed this mass as a fibrocystic condition but, as a precaution, referred plaintiff to Dr. Mary Boyle for a follow-up examination of plaintiff's left breast. Dr. Boyle examined plaintiff on May 1, 1992, concluded that plaintiff had fibrocystic disease, and recommended that plaintiff get a mammogram and then return for another follow-up.[1] Plaintiff's mammogram, which was performed on May 7, was negative. On May 15, plaintiff returned to Dr. Boyle's office. Dr. Boyle removed a mole from plaintiff's breast and recommended a biopsy of the mass in her left breast. The mass was biopsied on May 26 and on June 3 the pathology report of the biopsy indicated that can-

cerous tissue was present in the mass. Plaintiff subsequently underwent surgery and chemotherapy to combat the breast cancer.

Plaintiff submitted a claim to defendants seeking coverage under the group policy for the medical expenses incurred in the treatment of her breast cancer. On August 27, defendants denied her claim on the basis that the breast cancer was a pre-existing condition and was thus not covered by the policy. Using defendants' internal review mechanisms, plaintiff appealed defendants' decision several times, each time resulting in a denial of the claim. Plaintiff then filed an administrative complaint against defendants with the Maryland Insurance Division (MID). Defendants responded to the MID, affirming their decision to deny coverage to plaintiff. Plaintiff then initiated this action under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B). After a brief period for discovery, parties made the cross-motions for summary judgment that are now before this court.

## II.

Plaintiff alleges that defendants' denial of benefits violates ERISA, 29 U.S.C. § 1132(a)(1)(B). ERISA empowers participants in an employee benefit plan to bring a civil action in federal court to enforce their rights under the terms of the plan. The parties agree that this court should review defendants' denial of benefits *de novo.* *See generally Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989).[2]

Plaintiff's policy does not provide medical benefits for pre-existing conditions. The policy defines a "pre-existing condition" as:

---

1. On deposition Dr. Boyle testified that she would have recommended that plaintiff have a mammogram whether or not the presence of the fibrocystic changes had been noted since it had been more than a year since plaintiff had had a mammogram.

2. Although a court should ordinarily limit its review to the evidentiary record available to the plan administrator, it may in "exceptional circumstances" consider additional evidence. *Quesinberry v. Life Ins. Co.,* 987 F.2d 1017, 1026

(4th Cir.1993). "Exceptional circumstances" include "claims that require the consideration of complex medical questions ... [or] the necessity of evidence regarding interpretation of the terms of the plan rather than specific historical facts." *Id.* at 1027. Here, the parties seem implicitly to agree that exceptional circumstances exist since they engaged in discovery and have both cited to depositions of physicians. In any event, the substance of the evidence before me was equally before defendants when they denied plaintiff's claim.

a Sickness or Bodily Injury for which You have received medical attention (care, treatment, services, medication, diagnosis or consultation) prior to: 1. The effective date of Your medical or loss of time coverage under this Policy. . . .

A "sickness" is defined as:

a disturbance in the function or structure of Your body which causes physical signs and/or symptoms and which, if left untreated, will result in a deterioration of the health state of the structure or system(s) of Your body.

Def. SUMF, ¶¶ 8, 9. Therefore, the question presented in this case is whether prior to May 1, 1992 plaintiff had received "medical care, treatment, services, medication, diagnosis or consultation" for "a disturbance in the function or structure of . . . [her] body . . . which, if left untreated, . . . [would have] result[ed] in a deterioration of the health state of the structure or system[s] of . . . [her] body."

The record establishes that she had not. It is fair to say that prior to May 1, 1992, plaintiff had received medical attention for her fibrocystic disease. However, fibrocystic disease is not a "sickness" within the meaning of the policy since it would not in and of itself, if left untreated, have resulted in any deterioration of plaintiff's health. Conversely, while it may be assumed that plaintiff did have breast cancer prior to May 1, 1992—which certainly would be a "sickness" within the meaning of the policy—plaintiff had not received any "medical attention" for it. The cancer had not been diagnosed prior to May 1, 1992, and the care, treatment, service and consultation that plaintiff had received had only been for the fibrocystic disease.

Defendants seek to join the two distinct conditions of fibrocystic disease and cancer together by arguing that plaintiff had received medical attention for a mass in which the cancer and fibrocystic changes were both located. However, the undisputed medical record establishes that the simultaneous occurrence of the two conditions was coincidental. Moreover, the record further establishes that the "mass," i.e. the palpable and detectable condition, was caused by the fibrocystic changes and that although the cancer constituted approximately one-third of the mass, it would not alone have been observable.[3]

Under these circumstances it is clear that plaintiff is entitled to the health benefits that she seeks. Since the case can be decided on its own narrow facts, I need not decide the broader question which it poses. The purpose of pre-existing condition clauses is to protect "insurers from fraudulent applicants seeking coverage for known diseases while protecting innocent premium paying insureds from being deprived of benefits for pre-existing conditions of which they have no knowledge." *Mogil v. California Physicians Corp.*, 218 Cal.App.3d 1030, 267 Cal.Rptr. 487, 491 (1990). *Accord*, 10A *Couch on Insurance 2d*, § 41A:13 (stating that the purpose of the clause is to "shelter the insurer from claims arising out of conditions existing and known by the insured prior to the inception of the policy."); *Scarborough v. Aetna Life Ins. Co.*, 572 S.W.2d 282, 284 (Tex.1978) ("for the exclusion to apply it is necessary that the insured received a medical service (which may be a preliminary examination) directed towards a *known* condition."). It would, at the least, distort this purpose to hold that a beneficiary has a "pre-existing condition" within the meaning of the clause if she does not know or have reason to know of the existence of the condition. As one court has stated, "to consider a disease to exist at a time when the victim is blissfully unaware of the medical 'seeds' visited upon his body, is to set a trap for the unwary purchaser of health insurance policies." *Mutual Hosp. Ins., Inc. v. Klapper*, 153 Ind.App. 555, 288

---

**3.** The fact that prior to May 1, 1992 plaintiff was being treated for fibrocystic disease rather than for cancer is confirmed by Dr. Phillips–Seitz' contemporaneous actions. After she examined plaintiff on April 6, 1992, Dr. Phillips–Seitz arranged for plaintiff to be seen by Dr. Boyle more than three weeks later. This was because Dr. Phillips–Seitz believed that there was only a very small chance (which Dr. Phillips–Seitz quantified at deposition to be between one and five percent) that plaintiff had cancer. If Dr. Phillips–Seitz had been of the view that there was any substantial likelihood that plaintiff had cancer, she would have, according to her deposition testimony, arranged for plaintiff to be seen by a surgeon on that day or the next day.

N.E.2d 279, 282 (1972).[4]

A separate order effecting the rules made in this memorandum is being entered herewith.

## ORDER

For the reasons stated in the memorandum entered herein, it is this 7th day of January 1994

ORDERED

1. Defendants' motion for summary judgment is denied;

2. Plaintiffs' motion for summary judgment is granted; and

3. Judgment is entered in favor of plaintiffs against defendants.

4. To dispense with the requirement of knowledge is so perverse that even if a pre-existing condition clause expressly voided coverage for unknown conditions, it might be unenforceable as a matter of public policy. Certainly, in light of the common law doctrine of *contra proferentum, see generally Glocker v. W.R. Grace & Co.,* 974 F.2d 540 (4th Cir.1992); *Phillips v. Lincoln Nat. Life Ins. Co.,* 978 F.2d 302 (7th Cir.1992); *Delk v. Durham Life Ins. Co.,* 959 F.2d 104 (8th Cir. 1992); *Masella v. Blue Cross & Blue Shield, Inc.,* 936 F.2d 98 (2nd Cir.1991), a court would be reluctant to construe a pre-existing condition clause that is not explicit in not requiring knowledge or its equivalent.