**Joyce FISCHMAN**

v.

**BLUE CROSS & BLUE SHIELD OF CONNECTICUT, INC.**

Civ. No. N–90–229(JAC).

United States District Court,
D. Connecticut.

Oct. 15, 1991.

Frank W. Murphy and Barbara L. Coughlan, Tierney, Zullo, Flaherty & Murphy, Norwalk, Conn., for plaintiff.

Charles L. Howard and Mark F. Kohler, Shipman & Goodwin, Hartford, Conn., for defendant.

JOSÉ A. CABRANES, District Judge:

Plaintiff Joyce Fischman brings this action against defendant Blue Cross & Blue Shield of Connecticut, Inc. ("Blue Cross") to recover medical expenses incurred in the treatment of her late husband, Sidney Fischman ("Fischman"). Contending that Fischman's treatment related to a pre-existing condition excluded by the employee welfare benefit plan it issued, Blue Cross now moves for summary judgment. At issue is whether a plan beneficiary's illness is excluded from coverage as a pre-existing condition when medical advice for the illness was recommended or received before the illness was accurately diagnosed—a question here governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"). For the reasons stated below, Blue Cross' motion for summary judgment is granted.

## BACKGROUND

Sidney Fischman was the president and an employee of Sid Fischman Associates, Inc. Fischman applied for and was accepted for membership in a group health benefit plan ("the Plan") through Manufacturers' Associates of Southern Connecticut and Blue Cross. The Plan certificate (the "Certificate") provided that

> [t]he benefits specified in this Certificate cannot be provided for a pre-existing condition, disease, or ailment, if:
>
> the condition existed within the Pre-Existing Condition Period, as specified in the Schedule of Benefits, in such a manner as would cause a reasonably prudent person to seek diagnosis, care, or treatment; or medical advice or treatment was recommended or received within the Pre-Existing Condition Period as specified in the Schedule of Benefits.

Certificate at 36. The Schedule of Benefits specified the Pre-Existing Condition Period as the six months prior to the effective date of coverage, *id.* at 11, that date being April 1, 1989. Complaint ¶ 9.

Fischman died of rectal cancer on January 11, 1990. Over several months prior to the effective date of coverage under the Plan Fischman, in visits to various physicians, complained of symptoms such as frequent bowel movements and bloody stool. Memorandum of Law in Support of Defendant's Motion for Summary Judgment (filed Apr. 11, 1991) ("Defendant's Memorandum"), Exs. I, J (office notes of Jason Burack, M.D., and Michael Tager, M.D.).

As these symptoms persisted, Fischman followed the advice of his brother-in-law and visited a gastroenterologist, Dr. Harvey Riback. Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (filed May 2, 1991) ("Plaintiff's Memorandum"), Ex. E (Deposition of Joyce Fischman) at 45–46. On March 30, 1989, Dr. Riback performed a digital rectal examination on Fischman that revealed bloody mucous. Dr. Riback that day arrived at a "differential diagnosis" of diverticulitis, polyps, neoplasm, colitis, or arteriovenous malformation. Defendant's Memorandum, Ex. F (office notes of Harvey Riback, M.D.), Ex. E (deposition of Dr. Harvey Riback) ("Riback Deposition") at 42–43. Neoplasm is a term that can include cancer, but Dr. Riback did not initially expect cancer, *id.*, and the differential diagnosis did not specify rectal cancer in particular.

During the March 30, 1989, visit, Dr. Riback discussed the differential diagnosis with Fischman and recommended a colonoscopy, which he subsequently performed on April 11, 1989. Riback Deposition at 47, 51–52. The colonoscopy disclosed a rectal mass later determined to be rectal cancer. Plaintiff's Memorandum, Ex. G (colonoscopy report). Dr. Riback testified at deposition that the rectal cancer clearly was the cause of Fischman's symptoms observed at the examination on March 30, 1989, two days before the Plan's effective date of coverage. Riback Deposition at 86–88. Plaintiff does not challenge Dr. Riback's conclusion that Fischman's rectal cancer caused the symptoms Dr. Riback observed on March 30, 1989. Indeed, plaintiff notes in her brief that "up through the end of the Pre-Existing Condition Period, Mr. Fischman experienced some annoying symptoms, which may in retrospect be attributed at least in part to his rectal carcinoma." Plaintiff's Memorandum at 20–21.

Plaintiff and her husband submitted proof of loss forms to Blue Cross regarding Fischman's rectal cancer. Complaint ¶ 22. In response they received several form letters stating that "[s]ervices which are related to a pre-existing condition are not payable during the first 12 months of membership." Plaintiff's Memorandum, Ex. H (Explanation of Benefits Form). Fischman's attorney subsequently inquired of Blue Cross regarding the denial of benefits in letters dated October 6, 1989, November 10, 1989, December 11, 1989, and December 18, 1989. Plaintiff's Memorandum, Exs. I, J, K, L. Blue Cross declined to reply, except by an unsigned form letter dated March 29, 1990, which stated that services relating to a pre-existing condition were excluded from coverage. *Id.*, Ex. M. Plaintiff's attorney reports that plaintiff

did not learn how Blue Cross had reviewed her claims until the deposition of a Blue Cross employee on April 12, 1991. *Id.*, Ex. L (Affidavit of Frank W. Murphy). Although the question is not presented here, it would be difficult to conclude that plaintiff received the "[s]ervice, plain and simple" of which Blue Cross boasted on its letterhead. *See id.*, Ex. M.

Plaintiff filed this action alleging wrongful denial of benefits under ERISA and failure to provide the "full and fair review" of benefit claims required by ERISA, 29 U.S.C. § 1133(2). Plaintiff also asserted various pendent state law claims, which were dismissed by prior ruling entered December 16, 1990. Blue Cross now moves for summary judgment on the remaining ERISA claims. It argues (1) that Fischman's rectal cancer was a pre-existing condition excluded from coverage because a reasonably prudent person would have sought diagnosis, advice, or treatment for Fischman's symptoms during the pre-existing condition period; (2) that Fischman actually received medical advice or treatment for the rectal cancer during the pre-existing condition period; and (3) that whatever procedural improprieties may have occurred in processing plaintiff's claim, a substantive remedy is unavailable. Because I conclude that medical advice for Fischman's rectal cancer was both recommended and received during the pre-existing condition period, it is unnecessary to consider Blue Cross' first argument that a reasonably prudent person experiencing Fischman's symptoms would have sought diagnosis, advice, or treatment.

## DISCUSSION

Although the parties have vigorously disputed whether a reasonable and prudent person experiencing Fischman's symptoms would have sought medical diagnosis, advice or treatment, this factual issue need not be addressed in order to dispose of the instant motion. As noted earlier, plaintiff does not contradict Dr. Riback's sworn testimony that the symptoms he observed in his examination during the pre-existing condition period were caused by the rectal cancer not diagnosed until after the pre-existing condition period had ended. Summary judgment is appropriate where, as here, there are no material facts in dispute. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The parties agree that the Plan in question was governed by ERISA, 29 U.S.C. § 1002(1)(a), and that Fischman was a plan participant, 29 U.S.C. § 1002(7). The construction of the Plan is therefore a question of federal common law. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). While state law precedents accordingly do not bind this court, they are of considerable persuasive value. " '[T]he federal common law of rights and obligations' [under ERISA] must embody common-sense canons of contract interpretation." *Burnham v. Guardian Life Ins. Co. of America*, 873 F.2d 486, 489 (1st Cir.1989) (citation omitted). Moreover, "straightforward language in an ERISA policy must be given its natural meaning." *Id.* Because the Plan did not grant Blue Cross discretionary authority to determine eligibility for benefits to construe the terms of the Plan, the parties agree that this court must review plaintiff's claim under a *de novo* standard. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989).

### A.

### Was Fischman's Rectal Cancer a "Pre-existing Condition"?

Plaintiff contends that because Fischman's rectal cancer was not diagnosed in the pre-existing condition period, it was not a pre-existing condition as defined by the Plan. Specifically, plaintiff argues, Fischman was not given medical advice or treatment for *rectal cancer* during the pre-existing condition period in the sense that Dr. Riback did not diagnose rectal cancer until after the colonoscopy, which took place shortly after the pre-existing condition period had ended.

This argument fails. To be sure, the Plan's provision excluding pre-existing conditions from coverage is not a model of lucid English prose. However, by its terms it does not require that medical advice regarding or treatment of an extant condition must be recommended or undertaken after an accurate diagnosis of the condition in order for the condition to be excluded from coverage. To be made sensible, the phrase of the exclusion referring to "medical advice or treatment [that] was recommended or received" must relate back to the immediately prior phrase adverting to the existence of the condition "in such a manner as would cause a reasonably prudent person to seek diagnosis, care, or treatment." This prior phrase clearly contemplates that reasonable and prudent persons will seek treatment while not knowing the correct diagnosis of their symptoms and nonetheless have pre-existing conditions excluded by the Plan. The "advice or treatment" mentioned in the following phrase thus comprehend advice regarding or treatment of conditions not yet accurately diagnosed.

Other courts construing similar or identical language have similarly concluded that illnesses the symptoms of which were observed by a physician during the pre-existing condition period are excluded from coverage despite the absence of an accurate diagnosis. *See, e.g., Cury v. Colonial Life Ins. Co. of America,* 737 F.Supp. 847 (E.D.Pa.1990) (insurance policy governed by ERISA excluding "sickness ... for which [the insured] received medical treatment or consultation" excluded coverage of multiple sclerosis despite fact that multiple sclerosis was not yet definitively diagnosed during pre-existing condition period); *Zeh v. National Hospital Association,* 233 Or. 221, 377 P.2d 852, 854–55, 857–58 (1963) (neurologist's differential diagnosis was medical care or treatment during pre-existing condition period excluded from coverage); *Mogil v. California Physicians Group,* 218 Cal.App.3d 1030, 267 Cal.Rptr. 487, 491 (1990) (collecting numerous appellate cases and extensively discussing common law rule of interpretation that a pre-existing condition is one that manifests itself in the pertinent period, even without

diagnosis). Plaintiff has not drawn the court's attention to any cases specifically supporting her assumption that the condition must be accurately diagnosed before it may be considered a pre-existing condition excluded from coverage.

The rationale of the case law appears to be not merely that the language of the policies is clear. It is also that

> the underlying purpose of the limiting language of preventing unscrupulous applicants from fraudulently obtaining coverage for known, undisclosed preexisting illness [would be defeated] by placing the burden on the insurer of establishing precisely what an insured subjectively knew with regard to an illness.

*Mogil,* 267 Cal.Rptr. at 493; *see also id.* at 491. It would be very difficult for Blue Cross or any other insurer to establish precisely when an insured was accurately diagnosed with a particular ailment and when the insured became aware of the diagnosis. Further, coverage should not turn on whether the physician suspected a number of different ailments or had reached a conclusive diagnosis. Such a line is often not clear in medicine, and in any event it would be difficult for the insurer to determine whether the line had been crossed before or after a critical date. It cannot be ignored that, like the insured, the physician will often have a financial interest in favor of coverage. There is no intimation of dishonesty in this case, and application of the rule seems harsh; yet "it is the duty of all courts of justice to take care, for the good of the community, that hard cases do not make bad law." *United States v. Clark,* 96 U.S. 37, 49, 24 L.Ed. 696 (1877) (Harlan, J., dissenting) (citation omitted).

Dr. Riback's rectal examination of Fischman on March 30, 1989, disclosed the bloody mucous that was later determined to have been a symptom of the rectal cancer. Dr. Riback on that date supplied a differential diagnosis (albeit one not specifying rectal cancer) and recommended a colonoscopy. I need not decide whether Fischman's prior visits to other physicians and other treatments might have constitut-

ed "medical advice or treatment" as defined by the relevant provision of the Plan. For it is clear that Dr. Riback's differential diagnosis and recommendation of a colonoscopy on March 30, 1989, were medical advice recommended and received regarding Fischman's rectal cancer. Fischman's rectal cancer was therefore unquestionably a pre-existing condition excluded from Plan coverage.

## B.
### May Plaintiff Recover for Denial of "Full and Fair Review"?

█ Plaintiff additionally argues that Blue Cross violated procedural provisions of ERISA in denying her benefits. Plaintiff recounts a history of conclusory form letters sent by Blue Cross in response to specific inquiries by plaintiff and her attorney regarding coverage. It is a history with which anyone who has ever submitted a health insurance claim can readily empathize.

Blue Cross argues that it complied with ERISA procedures and that even if procedural violations occurred, the only remedy available is procedural, not substantive—in other words, failure of the plan fiduciary (here, Blue Cross) to provide full and fair review may be remedied only by remand to the fiduciary with instructions to undertake the proper review of the plan beneficiary's claim.[1] In support of this proposition Blue Cross relies upon a number of cases from other circuits, such as *Ashenbaugh v. Crucible, Inc., 1975 Salaried Retirement Plan*, 854 F.2d 1516, 1532 (3d Cir.1988), *cert. denied*, 490 U.S. 1105, 109 S.Ct. 3155, 104 L.Ed.2d 1019, *rehearing denied*, 492 U.S. 932, 110 S.Ct. 12, 106 L.Ed.2d 627 (1989), and *Wolfe v. J.C. Penney, Inc.*, 710 F.2d 388, 393 (7th Cir.1983). However, adopting the view of the Ninth Circuit in *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1353–54 (9th Cir.1984), our own Court of Appeals has held that procedural violations by an ERISA fiduciary may so taint the fiduciary's discretionary decision as to make it arbitrary and capricious, and sub-

ject to a substantive remedy—that is, an order directing provision of the particular benefits requested by the plan beneficiary. *Gilbert v. Burlington Industries, Inc.*, 765 F.2d 320, 328–29 (2d Cir.1985); *Veilleux v. Atochem North America, Inc.*, 929 F.2d 74, 76 (2d Cir.1991).

Nonetheless, plaintiff's argument is unavailing. As plaintiff notes in her brief, *see* Plaintiff's Memorandum at 11, Blue Cross' decision whether or not to provide coverage under the Plan was *not* discretionary, and is subject to *de novo* review in this court. *Gilbert* and *Blau*, relied upon by plaintiff, are therefore not in point because in those cases a substantive remedy to procedural violations may have been necessary to prevent an abuse of discretion by the fiduciary. Here Blue Cross has no discretion to abuse. Put another way, the substantive remedy plaintiff was entitled to seek here has effectively already been denied by the court's *de novo* determination that Fischman's rectal cancer was a pre-existing condition excluded from Plan coverage.

This result is not entirely a pleasing one. It suggests that whenever a plan beneficiary finds himself or herself in the situation plaintiff alleges here—receiving conclusory form letters from the plan fiduciary in response to specific inquiries—the only means of learning the actual basis of a denial of benefits lies in a lawsuit such as this one. As long as the plan fiduciary is convinced *its position can withstand judicial review*, it need not elaborate that position to the plan participant through regular correspondence or other channels short of a lawsuit. On the other hand, more elaborate explanations to disappointed plan beneficiaries would entail greater administrative expense. Congress has apparently given greater weight to the latter consideration, and plaintiff cites no authority for an award for procedural violations alone where the plan fiduciary's ultimate decision was correct. Accordingly, Blue Cross's motion for summary judgment on plaintiff's claim for procedural violations must be granted.

---

1. Plaintiff does not seek the procedural remedy of remand to Blue Cross for further review of plaintiff's claims. Plaintiff characterizes such further review as "futile." Complaint ¶ 31.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment (filed Apr. 11, 1991) is GRANTED. Judgment shall enter for defendant on all remaining claims.

It is so ordered.