**Kristina BOROWSKI, Plaintiff,**

v.

**INTERNATIONAL BUSINESS MACHINES CORPORATION, Defendant.**

No. 2:96–CV–4.

United States District Court, D. Vermont.

Sept. 16, 1997.

---

Mary Gilmore Kirkpatrick, Lisman & Lisman, Burlington, VT, for plaintiff.

Heather Briggs, Downs, Rachlin & Martin, P.C., Burlington, VT, for defendant.

## OPINION AND ORDER

SESSIONS, District Judge.

Kristina Borowski brings this action against her former employer, International Business Machines Corporation ("IBM"), alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA") in connection with its denial of her claim for disability benefits, submitted nine years after she resigned from the company. IBM has moved for summary judgment on Borowski's claims (paper 32). For the reasons that follow, IBM's motion is GRANTED.

## Background

For purposes of this summary judgment motion, the following facts are taken to be true. In February 1980 Borowski began

working at IBM as an environmental systems engineer. As an IBM employee, she was provided with a handbook which described IBM's self-administered Sickness and Accident Income Plan ("SAIP") and its Medical Disability Income Plan ("MDIP").

In 1982 Borowski experienced blurred vision, severe headaches, and occasional blackouts. In 1983 she also suffered joint pain and swelling. She received tentative diagnoses of a seizure disorder and/or lupus arthritis. Her symptoms caused her to miss work frequently. Borowski's medical situation was monitored by physicians at IBM's medical department, which cleared her for work with temporary restrictions in February 1982, and again in November 1982. In July 1983 the work restrictions were made permanent: "no working on elevations, avoid potential chemical or machine hazards, no driving company motor vehicles, not to work alone." Medical Examination Report, 7/21/83 (paper 38, ex. A).

In September 1983 Borowski became pregnant. By the end of November the combination of her chronic medical problems and problems associated with her pregnancy necessitated that she take a medical leave for the duration of her pregnancy. A consulting neurologist felt that her joint problems did not render her unable to work, but that taking all of her problems into consideration she was incapacitated. Medical History, 11/30/83 (paper 38, ex. B).

Borowski's medical leave began on December 12, 1983. Her salary was covered by the IBM SAIP. She was scheduled to return to work on June 15, 1984, approximately six weeks after the delivery of her baby.

Borowski's medical situation was monitored by the IBM medical department during her leave. She reported to them that her joint pain was less severe than in the past, but that she continued to have minor blackout episodes. The IBM physician anticipated clearing her medically for work, assuming she had a normal delivery.

Following the birth of her daughter, at the end of her six month leave, the IBM medical department was prepared to end Borowski's medical leave and clear her for work with the same work restrictions. Borowski, however, did not feel physically able to perform her old job. She requested part-time employment or continued leave. She was offered a one year unpaid leave of absence, which she accepted. There is no evidence that she inquired about continued medical leave with pay, or about disability benefits. IBM did not inform Borowski that she might be eligible for continued medical or disability benefits. IBM at the time did not consider Borowski to be unable to return to work, and there is no evidence that Borowski informed IBM that she was unable to work at all, only that she was unable to work full-time.

In June 1985 Borowski again requested part-time employment at IBM. She resigned effective June 15, 1985, when she was told that part-time work was not available. She was not advised about disability benefits at this time either, nor did she ask whether she might be covered under IBM's MDIP. There is no evidence that she informed IBM that she was unable to work.

From 1986 to 1990, Borowski continued to seek part-time employment, but was largely unsuccessful. In 1991 she was diagnosed with multiple sclerosis. In 1992 she applied for Social Security disability benefits, which were awarded November 29, 1994. The Administrative Law Judge concluded that Borowski had been disabled within the meaning of the Social Security Act since November 15, 1983.

In a letter dated July 15, 1994, Borowski wrote to IBM requesting an application for IBM disability benefits. In a letter dated July 27, 1994, Metropolitan Life Insurance Company ("MetLife"), which had handled IBM's medical and disability policies since 1993, informed Borowski that her application request was untimely because it had been filed more than twelve months after her date of disability, and that she was ineligible for long term disability benefits from MetLife because she had been covered under IBM's MDIP.

On December 21, 1995 Borowski filed this action against IBM in Chittenden Superior Court, alleging breaches of contract, of fiduciary duties, and of a covenant of good faith and fair dealing. IBM removed the case to

federal court on diversity grounds and moved to dismiss the complaint on the ground that Borowski's causes of action were preempted by ERISA. Borowski amended her complaint to allege causes of action under ERISA as well. IBM argued that the ERISA claims were time-barred and that Borowski lacked standing. In an opinion and order dated April 22, 1996, the Court dismissed the state law claims, but allowed the ERISA claims to stand. *Borowski v. International Bus. Mach. Corp.*, 928 F.Supp. 424 (D.Vt.1996). IBM has now moved for summary judgment on the ERISA claims.

### Discussion

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553. The party opposing summary judgment may not rest on its pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in its favor. *Id.* at 255, 106 S.Ct. at 2513, citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). Unless there is sufficient evidence to enable a jury to return a verdict in favor of the nonmoving party, there is no issue for trial. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted).

### I. Standing

IBM again argues that Borowski lacks standing to sue under ERISA. A participant or beneficiary of an ERISA plan may bring a civil action under Section 502(a)(1)(B) to recover benefits due to her under the terms of her plan, to enforce her rights under the terms of the plan, or to clarify her rights to future benefits under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B) (1985 and Supp.1997). A participant may also bring a civil action under Section 502(a)(2) or (3) of ERISA for appropriate relief from a breach of fiduciary duty. 29 U.S.C. § 1132(a)(2), (3) (1985 and Supp.1997). "Participant" is defined in ERISA as "any employee or former employee of an employer, . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer . . ." 29 U.S.C. § 1002(7) (1985 and Supp.1997). An employee benefit plan means an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan. 29 U.S.C. § 1002(3) (1985 and Supp.1997). An employee welfare benefit plan includes any plan, fund, or program established for the purpose of providing medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment. 29 U.S.C. § 1002(1) (1985 and Supp.1997).

It is undisputed that IBM's SAIP and MDIP were employee welfare benefit plans. IBM argues however, that Borowski does not meet the definition of participant. Because Borowski is not now an employee, nor was she when she applied for disability benefits, she can only qualify as a participant if she is a former employee who is or may become eligible to receive benefits.

The United States Supreme Court held, in a case involving standing to sue for pension benefits, that participant is naturally read to mean either employees in, or reasonably expected to be in currently covered employment, or former employees who have a reasonable expectation returning to covered employment or who have a colorable claim to vested benefits. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 117, 109 S.Ct. 948, 958, 103 L.Ed.2d 80 (1989). The Court in *Firestone* went on to explain, without referring strictly to vested pension benefits, however, that in order to establish that a claimant may become eligible for benefits, she must have a colorable claim that she will

prevail in a suit for benefits or that eligibility requirements will be fulfilled in the future. *Id.* at 117–18, 109 S.Ct. at 957–58. As a panel of the Seventh Circuit pointed out in a recent decision involving an employee welfare benefit claim, "[t]his language suggests not [a] narrow, technical reading of the phrase 'vested benefits' . . ., but a more expansive interpretation. Under such an interpretation, standing is available to any former employee who has a colorable claim to benefits which the employer promised to provide pursuant to . the employment relationship and which a non-frivolous argument suggests have accrued to the employee's benefit." *Panaras v. Liquid Carbonic Indus. Corp.,* 74 F.3d 786, 791 (7th Cir.1996). Otherwise, as the district court stated in *Andre v. Salem Technical Serv.,* 797 F.Supp. 1416, 1422 (N.D.Ill.1992), [i]f by 'vested benefits' *Firestone* meant to embrace only 'pension benefits,' then no former employee could bring an ERISA claim for welfare benefits allegedly accrued during employment."

In a recent case involving a suit under Section 510 of ERISA, which makes it unlawful to discriminate against a participant or beneficiary for the purpose of interfering with the attainment of any right to which the participant may become entitled, the Supreme Court made clear that when Congress uses the word "plan" as opposed to "pension plan" in ERISA, it draws no distinction between vested and non-vested rights or benefits. *Inter–Modal Rail Employees Ass'n v. Atchison, Topeka & Santa Fe Ry.,* —— U.S. ——, ——, 117 S.Ct. 1513, 1515, 137 L.Ed.2d 763 (1997).

And in *Mullins v. Pfizer, Inc.,* 23 F.3d 663 (2d Cir.1994), the Second Circuit held that a former employee who took early retirement had standing to assert an ERISA claim seeking benefits under a severance plan that included welfare benefits. which was adopted after he retired. It stated that "Congress intended the statutory scheme . . . to afford broad protection," "to provide the full range of legal and equitable remedies available," and "to remove jurisdictional and procedural obstacles," and thus the plaintiff should be given the opportunity to show that but for the fact that the company misled him, he would have been a participant in the plan. *Id.* at 667–68. See also *Vartanian v. Monsanto Co.,* 14 F.3d 697, 703 (1st Cir.1994), in which the First Circuit ruled that a retiree had standing to sue his employer for alleged misrepresentation of its intent to increase the early retirement benefits provided under its ERISA plan.

The Court concludes therefore that Borowski has standing as a former employee with a colorable claim to benefits available to her when she was employed by IBM to assert that IBM denied her those benefits.

## II. *Denial of Benefits*

In Count IV Borowski claims that IBM denied her benefits to which she was entitled under its SAIP and MDIP, in violation of 29 U.S.C. § 1132(a)(1)(B). IBM contends that Borowski did not meet the qualifications for these benefits and did not apply for them. Borowski does not dispute that she did not apply for benefits at any time before she requested an application for benefits in 1994, nine years after she resigned from IBM.

IBM's SAIP and MDIP are described in the IBM handbook, a copy of which was provided to Borowski.[1] SAIP and MDIP

---

1. Relevant portions of the SAIP description are reproduced below:

   If you can't come to work because you are sick or have an accident, your salary is taken care of by the IBM Sickness and Accident Income Plan which covers regular employees starting on the first day of employment.

   **What are my benefits?**

   While you are employed . . . this plan will provide you with your regular salary for each day absent to a maximum of 52 weeks in a period of 24 consecutive months. After these sickness and accident income payments cease, each case is considered individually. Payments cease on termination of employment.

   **What must I do to receive benefits?**

   If you are absent for more than three consecutive workdays, you must, upon request, submit a certificate of disability from your physician to be eligible for any further benefits for that particular absence. Whether you are at home or elsewhere, you must report to IBM either in person, by phone or by letter at least once a week and, when requested, furnish a physician's statement indicating the reasons that continued absence is necessary. IBM, in de-

benefits are, according to the handbook, available only to IBM employees. Although Borowski undeniably was an employee when she became sick, she undeniably was not an employee in 1994 when she claims her cause of action arose. Thus, it cannot be disputed that she did not qualify for disability benefits when she arguably applied for and was denied them in 1994, because she was not then an employee.

■ Borowski claims, however, that she was disabled and qualified for benefits prior to her resignation from IBM. Since the plan descriptions contain no time limits on making application for disability benefits, she contends she is not precluded from requesting benefits in 1994 based on a 1984 disability.

Borowski received her salary under the SAIP from December 12, 1983 to June 15, 1984. According to the plan description, she had not exhausted her SAIP payments when the IBM medical department cleared her to return to work as of June 18, 1984. Borowski has submitted no evidence that she objected to her medical clearance, or that she told anyone at IBM that she was still unable to work.

Borowski did inquire about the availability of part-time work, but an individual who is capable of working part-time does not qualify for benefits under SAIP or MDIP. IBM's Medical Disability Income, as described in the employee handbook, is available to an employee whose "disability from any cause prevents the taking of any employment for pay or profit." (emphasis supplied). The disability must have existed for at least nine months and be presumed to continue during the employee's lifetime. As of June 1984, Borowski's disability had existed for six months, and was deemed to have been temporary, not permanent.

Borowski believed that her year's leave of absence from June 18, 1984 to June 15, 1985 was a "medical leave." At the end of her leave she submitted a letter of resignation. She was still seeking part-time employment from IBM, and consequently would have been ineligible at that time for SAIP or MDIP. Moreover, although she had not been working for more than a year at that point, long enough to qualify for MDIP if she had exhausted her SAIP payments and if she was completely unable to work, there is no evidence that Borowski informed anyone at IBM that she was completely unable to work. In fact, Borowski admitted that "I did not even understand myself to have a disability at the time .... [a]t the time that I was

ciding whether or not you are entitled to benefits, may require an examination by a physician of the company's choice. IBM's decision is final.

**What happens if I become eligible for the IBM Medical Disability Income Plan?**
You will receive the maximum benefits under the Sickness and Accident Income Plan before receiving the monthly benefit payments under the IBM Medical Disability Income Plan.

SAIP (paper 38, ex. G).
Relevant portions of the MDIP description are reproduced below:
If you become medically disabled after five or more years of IBM service and are younger than age 65, you are eligible for an income, under this plan, until age 65 and for your lifetime thereafter, under the IBM Retirement Plan, and for other benefits under various company benefit plans.

**What does IBM consider a medical disability?**
An employee will be considered medically disabled by giving satisfactory proof to IBM that a disability from any cause prevents the taking of any employment for pay or profit. Disability must have existed for at least nine months and presumably will continue during the employ-

ee's lifetime. A physical examination may be required to determine the continuance of the disability.

\* \* \* \* \* \*

**How does the Medical Disability Income Plan work?**
After the expiration of the 52 weeks regular salary benefit of the Sickness and Accident Income Plan, you will receive a monthly benefit under the Medical
Disability Income Plan...

**If I am eligible for Social Security Disability Income benefits, do I automatically qualify for benefits under the Medical Disability Income Plan?**
No, eligibility for payment of Social Security Disability Income benefits, or disability benefits under the laws of any state, do not guarantee you benefits under the Medical Disability Income Plan.

\* \* \* \* \* \*

**What if I become disabled with less than five years of service?**
Once you meet all of the above eligibility criteria other than five years of service and at the expiration of the 52 weeks' regular salary benefit of the IBM Sickness and Accident Income Plan, you will receive a benefit...

employed by IBM. It's only in retrospect that I think now that I was." Borowski Dep. at 122 (paper 33, att. A).

Borowski has submitted the affidavit of Tania F. Bertsch, M.D., in support of her contention that she was disabled and qualified for benefits prior to her resignation. Dr. Bertsch has been Borowski's treating physician since 1994. In Dr. Bertsch's opinion, Borowski suffered from symptoms of multiple sclerosis in 1982, while she was employed at IBM. It is also her opinion that Borowski "was unable to return to her former job as of June, 1984, and without accommodation for her medical disability by her employer with part-time work she was medically disabled from employment." Bertsch Aff. at ¶ 5 (paper 40).

■ Dr. Bertsch's opinion, assumed to be accurate for purposes of summary judgment, does not establish Borowski's eligibility under IBM's SAIP or MDIP. The plans require, as previously stated, that an employee be unable to come to work (SAIP) or unable to take any employment for pay or profit (MDIP). Dr. Bertsch's affidavit confirms that Borowski was capable of parttime work in 1984, and was thus ineligible for benefits under IBM's plans.[2]

Because Borowski has produced no evidence that she was unable to come to work or disabled according to the terms of the SAIP and MDIP as of June 18, 1984 or June 15, 1985, and because she in fact communicated her desire to work part-time on both dates, there is no issue of material fact as to whether Borowski qualified for benefits while she was employed at IBM. Summary Judg-

ment is therefore appropriate on Count IV. *See de Coninck v. Provident Life and Accident Ins. Co.,* 747 F.Supp. 627, 631–32 (D.Kan.1990) (summary judgment appropriate where no evidence that plaintiff was disabled on the last date of his employment)

■ Because the Court has determined as a matter of law that she did not qualify for disability benefits while she was employed, and that she did not qualify for disability benefits after she ceased to be an employee, there is no need to reach the issue of whether Borowski's 1994 letter to IBM constituted an application for benefits, nor whether her failure to exhaust her administrative remedies under IBM's benefit plans could be excused as futile.[3] There is likewise no need to resolve whether Borowski's cause of action arose in 1994 when she arguably was denied disability benefits, or in 1985 when she ceased to work for IBM without being afforded disability benefits.

### III. *Inadequate Notice*

■ Borowski claims in Count V that IBM violated 29 U.S.C. § 1133 by failing to notify her of the reason for denial of benefits and affording her an opportunity to have the decision reviewed. Section 1133 provides that every employee benefit plan shall:

(1) provide adequate notice in writing to any participant whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied

MDIP (paper 38, ex. H).

**2.** ERISA does not require an employer to accommodate an employee's disability with part-time work or other accommodation. Moreover, Borowski has not brought any claim based on failure to accommodate a disability or discrimination because of disability, nor has she made a section 510 claim that IBM interfered with her ability to obtain benefits under an ERISA plan. At oral argument, Borowski conceded that such claims, if available to her in 1984, are now time-barred.

**3.** The plans provide that within 60 days after receiving a denial of plan benefits a claimant may request a review of the claim by writing to

the Plan Administrator, who must review the claim and issue a written decision within 60 days after the appeal is received. Claims Review Procedure (paper 38, ex. I). Claimants under ERISA must exhaust their administrative remedies before filing suit. *Kennedy v. Empire Blue Cross & Blue Shield,* 989 F.2d 588, 594 (2d Cir.1993); *Leonelli v. Pennwalt Corp.,* 887 F.2d 1195, 1199 (2d Cir.1989). A plaintiff may be excused from the exhaustion requirement if she makes a clear and positive showing that pursuing administrative remedies would have been futile. *Barnett v. International Bus. Mach. Corp.,* 885 F.Supp. 581, 587 (S.D.N.Y.1995) (allegation that IBM discouraged employee from applying for long-term disability benefits insufficient to excuse failure to exhaust).

for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133 (1985).

On July 15, 1994 Borowski wrote to IBM to apply for long-term disability. On July 27, 1994 a representative from MetLife denied her claim to benefits on the ground that the application was untimely, and added that because she was involved with IBM's MDIP, the plan which MetLife's Long Term Disability Plan replaced, she was ineligible to receive benefits from MetLife.

Section 1133 requires written notice of a denial of benefits, specifying the reasons for the denial. A notice of benefits denial is inadequate if it does not provide the claimant and the courts with a sufficiently precise understanding of the grounds for the denial to permit a realistic possibility of review. *Camarda v. Pan American World Airways, Inc.*, 956 F.Supp. 299, 310–11 (E.D.N.Y.1997). The MetLife letter provided adequate notice under the statute. Borowski has not claimed that she failed to understand the basis for the denial, although she disputes MetLife's determination.

Section 1133 also requires that a plan afford a reasonable opportunity for a full and fair review of the denial of benefits. Although the letter failed to specify how Borowski could obtain review of this denial, her employee handbook contained a "Claims Review Procedure" section, which stated:

> Within 60 days after receiving the denial, a claimant may request a review of the claim by writing to the Plan Administrator. A prompt review will be made after a request is received. A written decision on the review will be furnished within 60 days after the appeal is received.

The Handbook advised further that the employee had "the right, under ERISA, to seek redress of any improperly denied benefit by bringing suit in a Federal or state court." (paper 38, art. I).

Borowski was therefore on notice of the reasons for the denial of benefits and of how she could obtain review of the denial. But even if she did not receive adequate notice, the remedy for a violation of § 1133 is not necessarily an award of benefits. *Camarda*, 956 F.Supp. at 311. Plaintiff has cited no authority, nor is the Court aware of any, for an award of benefits for a procedural violation where the plan fiduciary's decision to deny benefits was correct. *See Fischman v. Blue Cross & Blue Shield*, 775 F.Supp. 513, 517 (D.Conn.1991). Accordingly, IBM's motion for summary judgment on Count V is granted.

### III. *Breach of Fiduciary Duty*

In Counts VI and VII Borowski claims that IBM breached fiduciary duties to her in violation of ERISA, both at the time of her resignation and when she requested an application for benefits. Under section 409(a) of ERISA, fiduciaries are liable for breach of any responsibility, obligation or duty imposed by ERISA. 29 U.S.C. § 1109(a) (1985). In defining the scope of a fiduciary's responsibilities, courts have relied on the common law of trusts. *Varity Corp. v. Howe*, —— U.S. ——, ——, 116 S.Ct. 1065, 1070, 134 L.Ed.2d 130 (1996).

Courts have held that a fiduciary may not deceive a participant about rights or benefits available under a plan. *Id.* at —— —— ——, 116 S.Ct. at 1074–75. *See also Ballone v. Eastman Kodak Co.*, 109 F.3d 117, 124 (2d Cir.1997) (employer may not misrepresent availability of future retirement benefits to induce early retirement); *Pocchia v. NYNEX Corp.*, 81 F.3d 275, 278 (2d Cir.) (plan fiduciaries may not affirmatively mislead plan participants about changes to employee pension benefit plans), *cert. denied*, —— U.S. ——, 117 S.Ct. 302, 136 L.Ed.2d 220 (1996). A fiduciary also has a duty to provide complete and accurate information about benefit plans upon inquiry by a plan participant or beneficiary. *Estate of Becker v. Eastman Kodak Co.*, 120 F.3d 5, 8 (2d Cir.1997). Although the Second Circuit has yet to decide the issue, courts of appeals in other circuits have held that even in the absence of a specific inquiry, a fiduciary who is aware that a beneficiary's interests may be adversely affected has a duty to inform her of any material information in its possession. *Eddy v. Colonial Life Ins. Co.*, 919 F.2d 747,

751 (D.C.Cir.1990). See also *Bixler v. Central Pa. Teamsters Health & Welfare Fund,* 12 F.3d 1292, 1300 (3d Cir.1993). *But see Weiss v. CIGNA Healthcare, Inc.,* 972 F.Supp. 748, 754 (S.D.N.Y.1997) (fiduciary had no duty to make affirmative disclosure on its own initiative)

It is undisputed that Borowski made no specific inquiry about the availability to her of any additional short or long-term disability benefits either at the conclusion of the medical leave for which she received SAIP benefits, or at the conclusion of her unpaid leave of absence. Under the circumstances however, IBM may have had an affirmative duty, under *Eddy* and *Bixler,* to inform Borowski at those times that she might be eligible for additional benefits it she was completely unable to work.

 Nevertheless, Borowski's breach of fiduciary duty claims cannot proceed. Section 502(a)(2) of ERISA authorizes a participant to bring a civil action for a breach of fiduciary duty under section 409. *Massachusetts Mut. Life Ins., Co. v. Russell,* 473 U.S. 134, 140, 105 S.Ct. 3085, 3089, 87 L.Ed.2d 96 (1985). Recovery for a violation of section 409 must inure to the benefit of the benefit plan as a whole and not to an individual claimant. *Id.* A participant may recover individual relief for a breach of fiduciary duty pursuant to section 502(a)(3), however, if the relief sought is equitable in nature, and if Congress has not elsewhere provided adequate relief for the injury. *Varity Corp.,* —— U.S. at ——, 116 S.Ct. at 1079.

Borowski seeks only individual relief, rather than relief on behalf of the welfare benefit plan, or on behalf of all plan participants and beneficiaries. She therefore cannot proceed under section 502(a)(2). She may proceed under section 502(a)(3) if the relief she seeks, recovery of benefits allegedly due her, is equitable in nature, and not otherwise available to her. An award of monetary relief may be equitable if it is restitutionary, or incidental to or intertwined with injunctive relief. *Chauffeurs, Teamsters and Helpers Local 391 v. Terry,* 494 U.S. 558, 570–71, 110 S.Ct. 1339, 1347–48, 108 L.Ed.2d 519 (1990). Arguably, a judgment awarding disability benefits could be considered restitutionary.

Section 502(a)(3) authorizes only "appropriate" equitable relief, however. Where a participant or beneficiary has a right to bring a claim for benefits under section 502(a)(1)(B), and does so, and seeks no different relief in her complaint, further equitable relief is not appropriate. *Wald v. Southwestern Bell Corp. Customcare Medical Plan,* 83 F.3d 1002, 1007 (8th Cir.1996). Because Borowski seeks the same relief in Counts VI and VII as she does in Count IV, summary judgment must be granted as to Counts VI and VII.

*Conclusion*

Defendant IBM's Motion for Summary Judgment (paper 32) is hereby GRANTED.