Stanley K. SANDERS, Plaintiff,

v.

CNA GROUP LIFE ASSURANCE
COMPANY, Defendant.

No. Civ.03–1236–BR.

United States District Court,
D. Oregon.

May 5, 2004.

Michael H. Bloom, Bloom & Shuckman, P.C., Portland, OR, for Plaintiff.

Katherine S. Somervell, Bullivant Houser Bailey PC, Portland, OR, for Defendant.

### OPINION AND ORDER

BROWN, District Judge.

This matter comes before the Court on Defendant CNA Group Life Assurance Company's Motion for Summary Judgment (# 12) and Plaintiff Stanley K. Sanders's Cross–Motion for Summary Judgment (# 17).

Sanders seeks insurance coverage under his employer's group long-term disability insurance policy issued by CNA. The parties' dispute arises from interpretation of a preexisting-condition exclusion in the CNA policy. The policy is an employee benefit plan subject to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.*

For the following reasons, the Court **DENIES** CNA's Motion for Summary Judgment and **GRANTS** Sanders's Cross–Motion for Summary Judgment.

### *FACTUAL BACKGROUND*

The following facts are either undisputed or are drawn from exhibits offered by the parties to which no objection has been made.

On July 18, 2002, Sanders saw Gary Geddes, M.D., his primary care physician, because Sanders was experiencing back pain, leg cramps, and weakness in his lower legs. In his comments, Dr. Geddes noted "periph neuropathy, foot drops, spasms, fasciculations." Dr. Geddes recommended Sanders have further bloodwork related to the neuropathy, an MRI, and a neurological evaluation.

Dr. Geddes's chart notes dated July 29, 2002, indicate Sanders had "hypothyroid

by bloodtesting" and "fatigue." Dr. Geddes opined, "Certainly [Sanders] can have high cholesterol and have some foot and neurological problems if he is hypothyroid." Dr. Geddes also noted Sanders had an appointment with Paul Ash, M.D., a neurologist, on July 31, 2002. Dr. Geddes prescribed Levoxyl, a medication for treating thyroid problems, for Sanders to begin taking after his appointment with Dr. Ash. Dr. Geddes also prescribed tonic water to treat Sanders's leg cramps and spasms.

On July 31, 2002, Dr. Ash conducted a neurological examination of Sanders. Dr. Ash concluded: "**IMPRESSION:** The patient has a neuropathy or axonal neuropathy, most likely the former." Dr. Ash also made the following entry in his report: "I do like to get a second opinion before I suggest to a patient that they might have ALS."[1]

During this time, Sanders was insured by his employer through CNA under a group long-term disability insurance policy effective August 1, 2002. The policy contained a preexisting-condition exclusion. "Preexisting condition" was defined in relevant part as "a condition for which medical treatment or advice was rendered, prescribed or recommended within 3 months prior to *Your* effective date of insurance." (Emphasis in original.)

On August 21, 2002, Sanders was examined by Todd DeVere, M.D., a neurologist who worked in the same clinic as Dr. Ash. Dr. DeVere noted Sanders "has mild slurred speech over the past two weeks" as well as other symptoms previously reported to Drs. Geddes and Ash. Dr. DeVere concluded, *inter alia:* "**IMPRESSION:** ... the recently noted speech involvement is more concerning for early ALS."

On September 26, 2002, Sanders was examined at the OHSU Neuromuscular Clinic and ALS Center for a second opinion. The OHSU clinic confirmed Dr. DeVere's suspicions.

On November 5, 2002, after Sanders ceased working because of his symptoms, Sanders filed a disability claim with CNA.

On December 6, 2002, CNA denied Sanders's claim on the ground that Sanders was "seen for and tested for symptoms of ALS during [his] preexisting period, with a preliminary diagnosis given 7/31/02."

Sanders appealed CNA's decision denying his claim. On May 28, 2003, CNA affirmed the denial of Sanders's claim based on the preexisting-condition clause of the policy, but CNA changed the reason for the denial to the following:

> Although Mr. Sanders was not *diagnosed* until after his effective date of coverage of 8/1/02, unfortunately, your client clearly presented with a condition (a medical state) related to the subsequent diagnosis. The contract does not state that a specific *diagnosis* must be rendered during the preexisting period for the condition to be considered preexisting.

Def.'s Mem. in Supp. of Summ. J., Somervell Decl., Ex. B. at 8 (emphasis in original).

The scope of discretionary authority granted to the plan administrator and to CNA is specifically set forth in the policy:

#### DISCRETIONARY AUTHORITY

The Policy is delivered and is governed by the laws of the governing jurisdiction and to the extent applicable, by the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments

---

**1.** "ALS" is an acronym for amyotrophic lateral sclerosis, commonly known as "Lou Gehrig's Disease."

thereto. The plan administrator and other plan fiduciaries have discretionary authority to determine *Your* eligibility for and entitlement to benefits under the Policy. The plan administrator has delegated the sole discretionary authority to Continental Casualty Company to determine *Your* eligibility for benefits and to interpret the terms and provisions of the Policy.

*Id.,* Somervell Decl., Ex. A. at 25 (emphasis in original). The policy, however, does not expressly grant to the plan administrator the discretionary authority to interpret the terms and provisions of the policy.

### STANDARDS

#### 1. *Summary Judgment.*

Fed.R.Civ.P. 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Leisek v. Brightwood Corp.,* 278 F.3d 895, 898 (9ᵗʰ Cir.2002). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id.*

An issue of fact is genuine " 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1061 (9ᵗʰ Cir.2002) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Id.* A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.,* 902 F.2d 1385, 1389 (9ᵗʰ Cir.1990). When the nonmoving party's

claims are factually implausible, that party must come forward with more persuasive evidence than otherwise would be required. *Blue Ridge Ins. Co. v. Stanewich,* 142 F.3d 1145, 1147 (9ᵗʰ Cir.1998) (citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Addisu v. Fred Meyer, Inc.,* 198 F.3d 1130, 1134 (9ᵗʰ Cir.2000). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 919 (9ᵗʰ Cir.2001).

#### 2. *Review of Plan Administrator's Decision.*

■ A court reviews *de novo* the interpretation of the terms of a plan and a denial of benefits under ERISA unless the ERISA plan gives the plan administrator or fiduciary the discretionary authority to determine an insured's eligibility for benefits and/or to construe the terms of the plan. If the plan grants such discretionary authority, the court reviews the denial of benefits under an abuse of discretion standard. *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

■ Under a review for abuse of discretion, the court must determine whether the plan administrator construed provisions in a way that conflicts with the plain language of the plan. *Bendixen v. Standard Ins. Co.,* 185 F.3d 939, 944 (9ᵗʰ Cir. 1999). The court will uphold a plan administrator's interpretation of plan terms unless the interpretation is arbitrary and not grounded on any reasonable basis. *Horan v. Kaiser Steel Ret. Plan,* 947 F.2d 1412, 1417 (1991). The doctrine of *contra proferentum* [2] does not apply to a court's re-

---

**2.** The doctrine of *contra proferentum* provides that ambiguities in insurance contracts must

be construed against the insurer. As noted in *Kunin v. Benefit Trust Life Insurance Compa-*

view based on abuse of discretion. *Lang v. LTD Plan*, 125 F.3d at 799.

■ Under a *de novo* standard, the court construes terms in ERISA trust agreements like any contractual provision "without deferring to either party's interpretation." *Id.* at 112 109 S.Ct. 948, 109 S.Ct. 948. "The terms of trusts created by written instruments are 'determined by the provisions of the instrument as interpreted in light of all the circumstances and such other evidence of the intention of the settlor with respect to the trust as is not inadmissible.'" *Id.* (citing *Restatement (Second) of Trusts* § 4, cmt. c (1959)). Under *de novo* review, the rules ordinarily associated with the interpretation of insurance policies apply. *Lang v. LTD Plan*, 125 F.3d 794, 799 (9th Cir.1997). Accordingly, the doctrine of *contra proferentum* requires the court to construe ambiguities against the plan administrator. *Id.*

■ Unless an ERISA plan "unambiguously ... [provides] in sum and substance that the Plan Administrator or fiduciary has authority, power, or discretion to determine eligibility or to construe the terms of the Plan, the standard of review will be de novo." *Sandy v. Reliance Standard Life Ins. Co.*, 222 F.3d 1202, 1207 (9th Cir.2000).

■ Even if an ERISA plan authorizes the plan administrator to exercise discretion in the interpretation of plan terms, the level of judicial deference granted to the plan administrator may be lessened if the plan administrator has a conflict of interest. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. at 115, 109 S.Ct. 948 (courts must weigh conflict of interest as a factor in determining whether abuse of discretion has occurred). An inherent conflict of interest is present when the plan administrator also funds the plan. *Lang v. LTD Plan*, 125 F.3d 794, 797 (9th Cir.1997). If a plan beneficiary presents evidence that the plan administrator acted in self-interest when it made a decision to deny benefits under the plan, the plan administrator must rebut the presumption by presenting evidence that the conflict of interest did not affect its decision to deny benefits. *Id.* at 798. If the plan administrator fails to present such evidence, the court's review "becomes de novo, 'without deference to the administrator's tainted exercise of discretion.'" *Id.*

## DISCUSSION

### 1. De Novo *Review of CNA's Interpretation of Policy Terms and Denial of Benefits to Sanders.*

■ CNA asserts the Court must review CNA's denial of disability insurance to Sanders for abuse of discretion because the plan administrator delegated to CNA discretionary authority to "determine ... eligibility for benefits and to interpret the terms and provisions of the policy." CNA asserts "the logical reading of this provision is that the authority to interpret the terms of the policy is included in the greater authority to determine 'entitlement' to benefits."

Sanders contends the Court should review *de novo* CNA's denial of disability insurance to Sanders because (1) the terms of the plan did not grant the administrator the discretion to interpret the terms of the policy, and (2) CNA had an inherent conflict of interest because it was both decision-maker and insurer on the policy and

---

*ny,* the rule applies to ERISA insurance polices. 910 F.2d 534, 539–40 (9th Cir.1990). "The rule is followed in all fifty states and the District of Columbia and with good reason. [Because insurance polices are drafted by in-

surance specialists] the insurer should be expected to set forth any limitations on its liability clearly enough for a common layperson to understand." *Id.*

its decision-making process appeared to be tainted by the conflict.

Under the express terms of the policy, the plan administrator had only the discretion "to determine [Sanders's] eligibility for [disability] benefits." In *Baxter v. Lynn*, the court held an ERISA plan that grants the trustees discretion to determine eligibility for the payment of claims "does not [implicitly] grant to the trustees the authority to [interpret the terms of the plan]." 886 F.2d 182, 188 (8ᵗʰ Cir.1989). *See also Masella v. Blue Cross & Blue Shield*, 936 F.23 98, 103 (2ᵈ Cir.1991) (discretionary authority to establish the terms and conditions of an ERISA plan is not the equivalent of an implicit grant of discretion to interpret the terms after they are established). According to CNA, the source of CNA's discretion to interpret the terms of the policy is a delegated grant of authority from the plan administrator. The plan, however, does not specifically grant to the plan administrator the discretionary authority to interpret the terms of the plan or the authority to delegate that right, which it does not possess, to CNA or to any other third party.

As previously noted, unless a plan administrator unambiguously has the discretionary authority to interpret the terms of the plan, the review is *de novo*. *Sandy v. Reliance Standard Life Ins. Co.*, 222 F.3d at 1207. The Court concludes, therefore, the plan here is ambiguous both as to the plan administrator's discretionary authority to interpret the terms of the plan and to delegate that discretionary authority to CNA.

In any event, even if the plan permitted the plan administrator to delegate such authority, a plan administrator who is also the payor under the plan is presumed to have acted in its self-interest when it changes its position regarding the reason for the denial of benefits. Under those circumstances, the plan administrator must present evidence to rebut the presumption of conflict. Otherwise, the court reviews *de novo* the decision to deny benefits. *See Lang v. LTD Plan*, 125 F.3d at 798. In this case, the Court concludes CNA failed to rebut a presumption of conflict of interest based on CNA's role as "delegated plan administrator" and insurer, coupled with CNA's significant change in its stated reason for denying Sanders's disability claim. *Id.*

Accordingly, the Court concludes CNA's interpretation of the terms of the policy is not entitled to deference and *de novo* review is the appropriate standard.

### 2. *CNA's Argument in Support of the Denial of Benefits.*

CNA originally denied Sanders's disability claim on the ground that Sanders was "seen for and tested for symptoms of ALS and was preliminarily diagnosed with ALS on July 31, 2002," which was one day before the effective date of CNA's policy. CNA asserted, therefore, the preexisting-condition exclusion clause applied.

After Sanders appealed CNA's original denial, CNA acknowledged its initial reason for denying Sanders's claim was wrong because Sanders actually had not been diagnosed with ALS on July 31, 2002. CNA then changed its reason for denying Sanders's claim and justified its denial on the ground that Sanders "presented with a condition (a medical state) related to the subsequent diagnosis [ALS]" before the effective date of the policy

CNA asserts the preexisting-condition exclusion requires only that symptoms of a condition appear and are treated before the effective date of the policy. CNA argues essentially that Sanders presented to Dr. Ash before the effective date of the policy coverage with neurological symptoms that were suggestive of ALS and which, in conjunction with later findings,

led to a confirmed diagnosis of ALS. Dr. Ash's chart notes reflect he suspected ALS, but he chose to send Sanders for a second opinion before informing Sanders.

CNA relies on cases in which the courts have held the treatment or the testing for symptoms of a preexisting condition is sufficient to trigger a preexisting-condition exclusion. Accordingly, CNA asserts the fact that Sanders was not officially diagnosed with ALS before the effective date of the policy does not preclude application of the exclusion.

In *Bullwinkel v. New England Mutual Life Insurance Company*, the court upheld the denial of medical expense payments for breast cancer treatment based on a preexisting-condition exclusion even though the breast cancer was diagnosed after the plaintiff's health care policy became effective. 18 F.3d 429 (7th Cir.1994). The plaintiff had noticed a large lump in her breast and had diagnostic tests before the policy became effective. The preexisting-condition exclusion provided benefits were not payable for "a condition for which you ... were seen, treated, diagnosed, or incurred medical expense in the six-month period before the insurance starts...." The court found the exclusion applied, but the court noted the case was unique: The lump discovered during the exclusion period was not a trivial or inconclusive symptom, and the plaintiff's attorney failed to address whether a lump that "is cancerous in one month was also cancerous two months before." *Id.* at 433.

In *Fischman v. Blue Cross and Blue Shield*, the plaintiff was covered under a health benefit plan that had a preexisting-condition exclusion for a condition "as would cause a reasonably prudent person to seek diagnosis, care, or treatment...." 775 F.Supp. 513 (D.Conn.1991). Before the effective date of the plan coverage, the plaintiff visited various doctors complaining of symptoms such as frequent bowel movements and bloody stool. After the coverage became effective, the plaintiff ultimately was diagnosed with and subsequently died from rectal cancer. The plan administrator denied plaintiff's claim for health benefits because the plaintiff was treated for the bowel condition before the effective date of coverage. In upholding the denial of benefits, the court focused on the language in the exclusion relating to the existence of a condition that would cause "a reasonably prudent person to seek diagnosis, care, or treatment." *Id.* at 516.

Similarly, in *Cury v. Colonial Life Insurance Company*, the plaintiff was diagnosed with multiple sclerosis only after the effective date of her disability policy. 737 F.Supp. 847 (E.D.Pa.1990). The court, however, held the actual diagnosis of multiple sclerosis was not a prerequisite to triggering the preexisting-condition exclusion because, *inter alia*, the plaintiff underwent diagnostic testing for multiple sclerosis before the effective date of the disability policy. The preexisting-condition exclusion in the policy included the following unambiguous language: "[A] preexisting condition means a sickness or injury for which you ... had diagnostic tests...."

### 3. Sanders's Arguments in Support of the Grant of Benefits.

CNA's policy defines a "preexisting condition" as "a condition for which medical treatment or advice was rendered, prescribed or recommended...." Sanders asserts the provision does not permit CNA to deny benefits on the sole basis of treatment of symptoms in the absence of a diagnosis. Sanders distinguishes between the treatment of a medical "condition" that would fall within the preexisting-condition exclusion and evaluation of symptoms of a

possible condition before the effective date of the policy.

In *Hughes v. Boston Mutual Life Insurance Company*, the plaintiff was covered under his employer's disability policy effective February 1, 1988. 26 F.3d 264 (1st Cir.1994). The plaintiff began suffering from symptoms consistent with multiple sclerosis (MS) in 1987, and medical notes from one physician's examination in 1987 indicated "possible MS." Neither the plaintiff nor his other treating physicians, however, were aware of the MS hypothesis before the effective date of the disability policy. The plaintiff was diagnosed with MS after the effective date of the policy, and the insurer denied the plaintiff's claim for disability benefits based on a preexisting-condition exclusion that defined preexisting condition as a "sickness or injury for which the insured received treatment within 6 months prior to the insured's effective date...." *Id.* at 266. The policy defined treatment as including "consultation, care or services provided by a physician including diagnostic measures and taking prescribed drugs and medicines." *Id.* The court acknowledged the reasonableness of the insurer's interpretation of treatment to include "treatment of any symptom which in hindsight appears to be a manifestation of the condition." *Id.* at 269. The court, however, also acknowledged the reasonableness of the plaintiff's interpretation that there should be some awareness on the part of the insured or his physician that the insured was being treated for the condition itself in order to trigger the exclusion. Because the court was reviewing the policy *de novo* and, therefore, was required to construe ambiguities against the insurer pursuant to the doctrine of *contra proferentum,* the court "adopt[ed] for purposes of summary judgment the construction offered by [the plaintiff]." *Id.* at 270.

Similarly, in *Van Volkenburg v. Continental Casualty Insurance Company*, the plaintiff was examined for a lump in her breast before the effective date of her disability policy, but she was not diagnosed as having cancer until after her disability policy took effect. 971 F.Supp. 117 (W.D.N.Y.1997). The insurer denied coverage based on a preexisting-condition exclusion identical to the exclusion at issue here. Under *de novo* review, the court held, as did the court in *Hughes,* that the exclusion did not bar coverage because the plaintiff was not aware the condition existed before the policy took effect. 971 F.Supp. at 124.

### 4. *Analysis.*

▉ Because the Court reviews the policy language *de novo,* it must construe ambiguous provisions in favor of Sanders. If the preexisting-condition exclusion in CNA's policy had included the term "diagnosis" or a related concept as the reason for seeking medical advice before the effective date of the policy, CNA's interpretation of the exclusion might be reasonable. Unlike the preexisting-condition exclusions at issue in *Fischman and Cury,* however, CNA's policy does not include the term "diagnosis" or any related concept.

For purposes of these Motions, the facts in this case are substantially the same as the facts in *Hughes* and *Van Volkenburg.* Like the plaintiffs in both of those cases, Sanders was not treated for ALS before the effective date of the policy because neither he nor his treating physician was aware that he suffered from ALS. The record does not reflect Sanders was referred to Dr. Ash for diagnosis, treatment, advice, or recommendations specifically relating to ALS. In addition, CNA has not presented any evidence to establish that Sanders suffered neurological symptoms

specific only to ALS before the effective date of Sanders's coverage under the policy. CNA merely presented Dr. Ash's chart note indicating that ALS was a possible diagnosis and that Dr. Ash wanted a second opinion before he even discussed the subject with Sanders.

On this record, the Court concludes no genuine issue of material fact exists that indicates Sanders and his family physician, Dr. Geddes, were aware of a potential diagnosis of ALS before the effective date of Sanders's coverage under CNA's disability policy.

Accordingly, the Court concludes application of Sanders's circumstances to a reasonable construction of CNA's policy is that "medical treatment or advice was [not] rendered, prescribed or recommended [to Sanders for ALS] within 3 months prior to [Sanders's] effective date of insurance."

The Court holds, therefore, CNA should not have denied disability benefits to Sanders based on the preexisting-condition exclusion in CNA's policy because that exclusion does not apply or, at best, is ambiguous as to whether it applies to the examination of a patient by a physician because of symptoms arising from an undiagnosed condition.

## CONCLUSION

For these reasons, the Court **DENIES** CNA's Motion for Summary Judgment (# 12), **GRANTS** Sanders's Cross–Motion for Summary Judgment (# 17), and **ENTERS** judgment in favor of Sanders.

IT IS SO ORDERED.